**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DISTRICT**

| | | |
|---|---|---|
| NATIONAL WILDLIFE FEDERATION;<br>SOUTH CAROLINA WILDLIFE FEDERATION;<br>NORTH CAROLINA WILDLIFE FEDERATION;<br>FLORIDA WILDLIFE FEDERATION;<br>LOUISIANA WILDLIFE FEDERATION;<br>ASSOCIATION OF NORTHWEST STEELHEADERS;<br>CONSERVATION COUNCIL FOR HAWAI'I;<br>Plaintiffs,<br>v.<br>UNITED STATES FISH AND WILDLIFE SERVICE; DOUG BURGUM, in his official capacity as Secretary of the United States Department of the Interior; NATIONAL MARINE FISHERIES SERVICE; HOWARD LUTNICK, in his official capacity as Secretary of The United States Department of Commerce;<br>Defendants. | ) | Case No. 2:26-cv-02897-RMG<br><br>**MOTION FOR A STATUS CONFERENCE AND TO DENY FEDERAL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS PREMATURE** |

Plaintiffs National Wildlife Federation, South Carolina Wildlife Federation, North Carolina Wildlife Federation, Florida Wildlife Federation, Louisiana Wildlife Federation, Association of Northwest Steelheaders, and the Conservation Council for Hawaii (hereinafter "the Wildlife Groups" or "Plaintiffs") hereby move for a status conference at the Court's earliest convenience, and ask this Court to deny as premature the Motion for Summary Judgment filed by United States Fish and Wildlife Service, Doug Burgum, the National Marine Fisheries Service, and Howard Lutnick ("Federal Defendants").

Federal Defendants' summary judgment motion was filed in contravention of the Court's September 22, 2026 Scheduling Order. ECF No. 14. Over Plaintiffs' objection, Federal Defendants filed their motion before the required Rule 26(f) conference; before the Wildlife

Groups' filing of an amended complaint (as of right), including an amendment to add an Endangered Species Act claim based on a 60-day notice letter Plaintiffs sent in July, as well as claims regarding new and expanded action taken by Federal Defendants without proper notice and comment on September 14, 2026; and before any opportunity to review and/or challenge the administrative record that governs claims under the Administrative Procedure Act ("APA") such as those at issue here. More, the motion ignores the possibility that Plaintiffs may be entitled to – and wish to seek – discovery on certain of their claims.

The motion is wholly inappropriate and premature and should be denied.[1] Plaintiffs are prepared to appear at a status conference and discuss an appropriate schedule for this litigation that allows the Court to review all challenged actions (after Plaintiffs' amendment) in a full and fair fashion.

## BACKGROUND

Plaintiffs filed this litigation challenging Federal Defendants' effort to rescind their long-standing definition of "harm" under the Endangered Species Act ("ESA") on July 17, 2026. *See* ECF No. 1; *see also* Rescinding the Definition of "Harm" Under the Endangered Species Act, 91 Fed. Reg. 43,300 (July 14, 2026) (to be codified at 50 C.F.R. pts. 17, 222) ("the Harm Rescission").

Stated simply, Federal Defendants' Harm Recission has eliminated the long-standing definition of "harm" under the ESA. Historically, "harm" has included "significant habitat modification or degradation which actually kills or injures" endangered or threatened fish or wildlife. 50 C.F.R. § 17.3. This definition was adopted nearly contemporaneously with the

---

[1] Plaintiffs agree that this denial would be without prejudice, with a right to refile at the appropriate time after any record disputes and/or potential discovery has occurred.

passage of the ESA and remained consistent for over five decades. As alleged in the Wildlife Groups' complaint, Federal Defendants have now unlawfully rescinded this definition in contravention of the text, purpose, and history of the ESA and in violation of the federal APA, 5 U.S.C. §§ 701–706.

But even more glaringly, Federal Defendants have gone even further since the Harm Recission was finalized. On the same day that the Harm Recission went into effect, without any public notice, comment, or publication, Federal Defendants issued two legal memoranda that order agency staff to carry out a second, even more expansive action: the wholesale reinterpretation of "take" under the ESA—not limited to the rescinded definition of "harm." *See* Ex. 1, Brian Nesvik, Director, U.S. Fish & Wildlife Serv., Scope of the Endangered Species Act's "Take" Prohibition Following the Harm Rule (91 Fed. Reg 43300) (Sept. 14, 2026) ("FWS Take Directive"); Ex. 2, John Luce, General Counsel, Nat'l Oceanic & Atmospheric Admin., Scope of the Endangered Species Act's "Take" Prohibition Following the Harm Rule (91 Fed. Reg 43300) (Sept. 14, 2026) ("NOAA Take Directive"). Pursuant to these new directives, the Services purport to expand the scope of the Harm Recission to eliminate any regulation of "incidental take" and to embrace an exact reading of "take" that the Supreme Court has previously rejected in *Babbitt v. Sweet Home Chapter of Communities for a Great Oregon*, 515 U.S. 687 (1995). The FWS and NOAA Take Directives are procedurally and substantively infirm.

Not only are the processes and substance of the Federal Defendants' purported rulemakings bold and unlawful, but they now attempt to force a procedure upon the Wildlife Groups and this Court that would upend the way that litigation routinely proceeds pursuant to the

APA. In doing so, Federal Defendants have ignored this Court's Scheduling Order, *see* ECF No. 14, and filed this premature motion over the Wildlife Groups' objection.[2]

## ARGUMENT

Federal Defendants' motion is flawed and must be denied as premature for multiple reasons. Plaintiffs request that all parties appear before the Court for a status conference to set an appropriate schedule for this litigation.

**First,** the motion was filed in contravention of this Court's Scheduling Order. Under that order, the Wildlife Groups and Federal Defendants were supposed to participate in a Rule 26(f) conference by October 13, 2026 to plan for the progress of this litigation. ECF No. 14. The parties' Rule 26(f) report was not due until October 27, 2026, at which time the parties would have filed the required form explaining their views of the appropriate schedule for this case. *Id.* Rather than attempting to work out a schedule with the Wildlife Groups, Federal Defendants have filed a wholly inappropriate and premature motion in disregard of the Court's Scheduling Order (and without moving to amend that Scheduling Order). As noted in that Order, "a scheduling order 'is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril.'" *Id.* (quoting *Forstmann v. Culp*, 114 F.R.D. 83, 85 (M.D.N.C. 1987)).

---

[2] Federal Defendants conferred with counsel for the Wildlife Groups on October 1, 2026 regarding their planned premature motion for summary judgment. During that conference, counsel for the Wildlife Groups objected to the filing of this motion before Plaintiffs could amend their complaint as of right, including by adding an ESA claim that Wildlife Groups had duly noticed to Federal Defendants; and review and, if necessary, challenge the administrative record. Plaintiffs' counsel also informed Federal Defendants that this filing was in contravention of the Court's Scheduling Order requiring a Rule 26(f) conference to occur on October 13, 2026 and a subsequent Rule 26(f) report to govern the litigation to be filed on October 27, 2026. Federal Defendants nonetheless filed their premature summary judgment motion.

**Second**, Federal Defendants have filed this motion before the deadline for the Wildlife Groups to amend their complaint as of right has even run. Federal Defendants filed an answer to Plaintiffs' complaint on September 21, 2026. *See* ECF No. 12. Plaintiffs have until Tuesday, October 13, 2026 to amend as of right.[3] Plaintiffs plan to amend to add claims regarding a failure to engage in required ESA consultation, a claim which was noticed to Federal Defendants on July 14, 2026 as required by the ESA. 16 U.S.C. § 1540(g)(2).

Additionally, the Wildlife Groups now plan to amend based on the late-breaking FWS and NOAA Take Directives that greatly expand what was noticed and promulgated in the Harm Recission. Rather than being focused on "harm" and habitat destruction or modification, the FWS and NOAA Take Directives broadly redefine the term "take," which includes far more than the rescinded harm definition. The re-definition of "take" to include only intentional, affirmative conduct with a designed purpose to hurt a listed animal is a new action that had not occurred when Plaintiffs first filed their complaint. The Wildlife Groups must also now amend to challenge these directives as a violation of the plain language and overarching purpose of the ESA; because they lack any rational basis and are arbitrary and capricious under the APA; and because they fail to comply with mandatory notice-and-comment rulemaking requirements under the APA. Federal Defendants should not be allowed to short-circuit Plaintiffs' right to amend and pursue *all* of their claims with the filing of a premature motion for summary judgment.[4]

---

[3] Under Rule 15(a)(1), 21 days from date of Federal Defendants' answer (September 21) falls on Monday, October 12th, a federal holiday. Thus, Plaintiffs plan to file their amended complaint on Tuesday, October 13th.

[4] Notably, Federal Defendants' motion for summary judgment fails to even mention the newly-issued FWS and NOAA Take Directives that attempt to eviscerate, without notice and comment, all incidental take under the ESA.

**Third**, Federal Defendants' motion attempts to usurp the normal process for litigating claims brought pursuant to the APA. As the Court is aware, the APA governs judicial review of a final agency action. *See, e.g., Roland v. United States Citizenship & Immigration Servs.*, 850 F.3d 625, 629 n. 3 (4th Cir. 2017). Under the APA, an agency's decision must be set aside when it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). When reviewing an agency's decision, a court is instructed to review "the whole record or those parts of it cited by a party[.]" 5 U.S.C. § 706. The Supreme Court has made clear that this review must be made based on the "full administrative record that was before the [agency] at the time [it] made [the] decision." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). As explained by multiple courts, including district courts in the Fourth Circuit, "[th]e whole administrative record includes pertinent but unfavorable information, and an agency may not exclude information on the ground that it did not 'rely' on that information in its final decision." *Outdoor Amusement Bus. Ass'n, Inc. v. Dep't of Homeland Sec.*, No. CV ELH-16-1015, 2017 WL 3189446, at *7 (D. Md. July 27, 2017) *citing Tafas v. Dudas*, 530 F. Supp. 2d 786, 793 (E.D. Va. 2008).

Here, Federal Defendants filed the Administrative Record on the very day that they filed for summary judgment. The Wildlife Groups have had no opportunity to review that record to determine whether it is complete and includes all relevant information, and no opportunity to file motions challenging the scope of the record, which should be resolved before summary judgment.

On a brief, initial review, the record appears to fail to include all public comments on the Harm Recission. Rather than properly including all public comments in the Administrative Record, the Index for the Administrative Record simply asserts that:

> All public comments and other suporting [sic] documents on Public Docket No. FWS-HQ-ES-2025-0034, available at https://www.regulations.gov/docket/FWS-HQ-ES-2025-0034, are incorporated into the administrative record.

However, according to the totals reported on that website, only 242,900 of the 357,699 submissions received on the rule have been published, leaving roughly *one third* of comments unaccounted for. *See* https://www.regulations.gov/docket/FWS-HQ-ES-2025-0034; *see also* 91 Fed. Reg. 43,300, 43,302 (July 14, 2026) (reporting the receipt of "approximately 358,000 public comments on the proposed rule"). Plaintiffs therefore believe the record is incomplete and anticipate a need to seek completion of the Administrative Record through further motions before any summary judgment motions could properly be considered.

The record also lacks any inter-agency correspondence between FWS and NOAA on this rulemaking or a privilege log explaining the basis for withholding these documents. *See S.C. Coastal Conservation League v. Ross*, 431 F. Supp. 3d 719, 725 (D.S.C. 2020) (requiring NOAA to produce a privilege log because "without a privilege log, the Court would have no way to evaluate assertions of privilege and whether documents were improperly excluded from the administrative record"). The need for an opportunity to file record motions in this case is not speculative and should occur before summary judgment.

Moreover, the administrative record fails to include any information regarding the adoption or implementation of the late-breaking FWS and NOAA Take Directives (or how they are being implemented). As courts have routinely noted, "motions for summary judgment, particularly in the APA context, should not be granted in the absence of a full administrative

record." *Guilford College v. Mcaleenan*, 389 F. Supp. 3d 377, 398 (M.D.N.C. 2019). Not only would Federal Defendants' approach deprive Plaintiffs of their opportunity to ensure that a complete record is before the Court, but it would deprive this Court of its ability to conduct an appropriate APA review.

Finally, it is worth noting that the FWS and NOAA Take Directives may present the need for Plaintiffs to take discovery in this case. As explained above, these directives do not appear in the current administrative record and appear to have been coordinated by the agencies in secret and issued out of the blue. Plaintiffs may be entitled to seek discovery on the inter-agency coordination and issuance of these directives, and to "look to post-guidance events to determine whether the agency has applied the guidance as if it were binding on regulated parties." *Nat'l Mining Ass'n v. McCarthy*, 758 F.3d 243, 253 (D.C. Cir. 2014) (Kavanaugh, C.J.); *Nat'l Min. Ass'n v. Jackson*, 856 F. Supp. 2d 150, 158 (D.D.C. 2012) ("[C]ourts in this Circuit will consider [extra-record] evidence that post-dates the issuance of the guidance document solely to determine whether the document is being applied as a rule."). This potential provides yet another reason that proceeding with summary judgment would be improper here. *See, e.g.,* Fed. R. Civ. P. 56(d) (providing that summary judgment may be deferred or denied when an opposing party demonstrate that "it cannot present facts essential to justify its opposition.")

## CONCLUSION

For all the reasons stated herein, Plaintiffs hereby request a status conference and that Federal Defendants' Motion for Summary Judgment be denied as premature with a right to refile at the appropriate time.

Respectfully submitted this 9th day of October 2026.

/s/ Catherine M. Wannamaker
Catherine M. Wannamaker
Fed. ID No. 12577

Southern Environmental Law Center
525 East Bay Street, Suite 200
Charleston, South Carolina 29403
Telephone: (843) 720-5270
cwannamaker@selc.org

Elizabeth Rasheed (*pro hac vice forthcoming)*
N.C. Bar No. 55635
Allyson Gambardella (*pro hac vice forthcoming)*
N.C. Bar No. 62371
Southern Environmental Law Center
135 E Rosemary Street, Suite 500
Chapel Hill, NC 27514
Telephone: (919) 967-1450
erasheed@selc.org
agambardella@selc.org

*Attorneys for Plaintiffs*