**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

NATIONAL WILDLIFE FEDERATION; SOUTH CAROLINA WILDLIFE FEDERATION; NORTH CAROLINA WILDLIFE FEDERATION; FLORIDA WILDLIFE FEDERATION; LOUISIANA WILDLIFE FEDERATION; ASSOCIATION OF NORTHWEST STEELHEADERS; CONSERVATION COUNCIL FOR HAWAI‘I,

Plaintiffs,

v.

UNITED STATES FISH AND WILDLIFE SERVICE; DOUG BURGUM, in his official capacity as Secretary of the United States Department of the Interior; NATIONAL MARINE FISHERIES SERVICE; HOWARD LUTNICK, in his official capacity as Secretary of the United States Department of Commerce,

Federal Defendants.

Civil Action No. 2:26-cv-02897-RMG

**FEDERAL DEFENDANTS’ PARTIAL MOTION TO DISMISS AND STRIKE PLAINTIFFS’ FIRST AMENDED COMPLAINT [DKT. NO. 23]**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........ 1
BACKGROUND ........ 2
STANDARD OF REVIEW ........ 5
ARGUMENT ........ 6
I. The Court lacks subject matter jurisdiction because Plaintiffs' claims do not challenge a final agency action under the APA. ........ 7
A. The Memoranda do not consummate any agency decision-making process ........ 7
B. Legal consequences do not flow from the Memoranda. ........ 8
II. Plaintiffs lack standing to bring claims speculating about general future harms. ........ 10
III. In the alternative, the Court should strike Plaintiffs' improperly asserted supplemental claims. ........ 12
CONCLUSION ........ 12

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Advanced Integrative Med. Sci. Inst., PLLC v. Garland*,
24 F.4th 1249 (9th Cir. 2022) ... 10

*Babbitt v. Sweet Home Chapter of Cmtys. for a Great Or.*,
515 U.S. 687 (1995) ... 3, 4, 10

*Bennett v. Spear*,
520 U.S. 154 (1997) ... 1, 7, 8

*Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc.*,
467 U.S. 837 (1984) ... 3

*City of N.Y. v. U.S. Dep't of Def.*,
913 F.3d 423 (4th Cir. 2019) ... 5

*DaimlerChrysler Corp. v. Cuno*,
547 U.S. 332 (2006) ... 6

*Evans v. B.F. Perkins Co., Div. of Standex Int'l Corp.*,
166 F.3d 642 (4th Cir. 1999) ... 5

*FDA v. All. for Hippocratic Med.*,
602 U.S. 367 (2024) ... 11

*Franklin v. Massachusetts*,
505 U.S. 788 (1992) ... 7

*Franks v. Ross*,
313 F.3d 184 (4th Cir. 2002) ... 6, 12

*FTC v. Standard Oil Co.*,
449 U.S. 232 (1980) ... 1

*Golden & Zimmerman, LLC v. Domenech*,
599 F.3d 426 (4th Cir. 2010) ... 1, 8, 9

*Invention Submission Corp. v. Rogan*,
357 F.3d 452 (4th Cir. 2004) ... 8

*Jake's Fireworks, Inc. v. U.S. Consumer Prod. Safety Comm'n*,
105 F.4th 627 (4th Cir. 2024) ... 5, 7

*Kerns v. United States*,
585 F.3d 187 (4th Cir. 2009) ... 5

*Loper Bright Enters. v. Raimondo*,
603 U.S. 369 (2024) ... 9

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ... 1, 2, 6, 10

*Murthy v. Missouri*,
603 U.S. 43 (2024) .......... 12

*Nat'l Park Serv. v. Nat'l Tr. for Hist. Pres. in the U.S.*,
No. 26A203, 2026 WL 2564318 (U.S. Aug. 31, 2026) .......... 11

*Nat'l Veterans Legal Servs. Program v. U.S. Dep't of Def.*,
990 F.3d 834 (4th Cir. 2021) .......... 5

*Perez v. Mortg. Bankers Ass'n*,
575 U.S. 92 (2015) .......... 9

*Richmond, Fredericksburg & Potomac R.R. Co. v. United States*,
945 F.2d 765 (4th Cir. 1991) .......... 6

*S. Cal. All. of Publicly Owned Treatment Works v. U.S. EPA*,
8 F.4th 831 (9th Cir. 2021) .......... 8, 9

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) .......... 6

*Summers v. Earth Island Inst.*,
555 U.S. 488 (2009) .......... 11

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 10

*White Tail Park, Inc. v. Stroube*,
413 F.3d 451 (4th Cir. 2005) .......... 6

*Williams v. United States*,
50 F.3d 299 (4th Cir. 1995) .......... 5

**Statutes**

5 U.S.C. § 551(13) .......... 8

5 U.S.C. § 702 .......... 7

5 U.S.C. § 704 .......... 5, 7

16 U.S.C. § 1532(19) .......... 2

16 U.S.C. § 1536(a)(2) .......... 8

16 U.S.C. § 1536(b)(4) .......... 8

**Constitutional Provisions**

U.S. Const. art. III, § 2, cl. 1 .......... 10

**Rules**

Fed. R. Civ. P. 12(b)(1) .......... 5

Fed. R. Civ. P. 12(f) .......... 6

Fed. R. Civ. P. 15(d) .......... 2, 5, 6, 12

**Federal Register**

46 Fed. Reg. 54748 (Nov. 4, 1981).......... 2
64 Fed. Reg. 60727 (Nov. 8, 1999).......... 2, 3
91 Fed. Reg. 43300 (July 14, 2026).......... 1, 3, 4, 10

## INTRODUCTION

This case presents a single, clear legal question: whether the final rule rescinding the regulatory definition of "harm" under the Endangered Species Act (ESA) was lawful. *See* 91 Fed. Reg. 43300 (July 14, 2026) (Final Rule). Through their Amended Complaint, Plaintiffs try to complicate, distract, and delay the resolution of that straightforward question by injecting new claims regarding internal agency memoranda circulated within the agencies after the Final Rule's effective date (Memoranda). But those Memoranda merely reiterate the statutory interpretation adopted in the Final Rule and summarize its practical effects; the Memoranda carry no independent legal consequence, nor do they purport to do so. Plaintiffs' backdoor attempt to transform routine agency guidance into three entirely new causes of action should be rejected for at least three reasons.

*First,* Plaintiffs' new claims should be dismissed for lack of subject matter jurisdiction. The Memoranda are not challengeable "final agency action" under the APA because they do not consummate agency decision-making or determine rights or obligations. Rather, the Memoranda are post-decisional documents that merely restate what the Services already articulated in the Final Rule, and they have no independent legal consequence. *See Bennett v. Spear*, 520 U.S. 154, 177-78 (1997); *FTC v. Standard Oil Co*., 449 U.S. 232, 239-40 (1980). The Fourth Circuit has held that such guidance documents do not constitute reviewable final agency action. *See Golden & Zimmerman, LLC v. Domenech*, 599 F.3d 426, 432-33 (4th Cir. 2010) (dismissing a challenge to an agency guidance document for lack of subject matter jurisdiction because the document summarized "what violates the law" but did "not itself determine the law or the consequences of not following it").

*Second*, the Court should also dismiss the claims because Plaintiffs do not, and cannot, plausibly allege an Article III injury traceable to the Memoranda. *See Lujan v. Defs. of Wildlife*,

504 U.S. 555, 560-61 (1992). Because the Memoranda merely reiterate what the ESA and Final Rule already require, they do not cause any injury to Plaintiffs. Indeed, the lack of any independent consequences from the Memoranda is demonstrated by Plaintiffs' own Amended Complaint, in which Plaintiffs draw no distinction between the alleged harm caused by the Final Rule and Memoranda. *See* Dkt. No. 23 ¶¶ 26-30.

And *third*, Plaintiffs have tucked these supplemental claims into an amendment, sidestepping Rule 15(d)'s requirement that they seek leave before doing so. There are six other cases pending in various federal courts about the Final Rule. In those cases, every other Plaintiff who has attempted to add claims about the post-decisional Memoranda to their pleadings has done so through the proper vehicle: seeking leave of court to supplement their complaint. Plaintiffs here should not be allowed to avoid the Federal Rules of Civil Procedure. Thus, in the alternative, the Court should strike Plaintiffs' new claims challenging the Memoranda—which were issued *after* Plaintiffs filed their complaint—as improperly asserted supplemental claims. Fed. R. Civ. P. 15(d).

## **BACKGROUND**

Plaintiffs in this case challenge the Final Rule rescinding the regulatory definition of "harm" as used in the ESA's "take" prohibition. *See* Dkt. No. 1. The ESA regulates "take" of listed species. "'[T]ake' means to harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any such conduct." 16 U.S.C. § 1532(19). Previously, the U.S. Fish and Wildlife Service and the National Marine Fisheries Service (collectively, the Services) defined "harm" within the definition of "take" to include "an act which actually kills or injures wildlife. Such act may include significant habitat modification or degradation where it actually kills or injures wildlife by significantly impairing essential behavioral patterns, including breeding, feeding or sheltering." 46 Fed. Reg. 54748, 54750 (Nov. 4, 1981); *see also* 64 Fed.

Reg. 60727, 60731 (Nov. 8, 1999).

In 1995, applying *Chevron* deference, the Supreme Court upheld the now-rescinded definition of "harm" as a "permissible" construction of the statute. *Babbitt v. Sweet Home Chapter of Cmtys. for a Great Or.*, 515 U.S. 687, 697, 703, 708 (1995) (citing *Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984)). Justice Scalia authored a canonical dissent, explaining that the ESA did not allow for the Services' now-rescinded definition of "harm." *Id*. at 714-36 (Scalia, J., dissenting). Focusing on the text, Justice Scalia explained that the words Congress used to define "take" share "the sense of affirmative conduct intentionally directed against a particular animal or animals." *Id.* at 720.

In the Final Rule, the Services adopted Justice Scalia's reading of "take" and rescinded the regulatory definition of "harm." The Services explained: "[T]he term 'harm,' like the other nine verbs in the definition of 'take,' should be construed to require an 'affirmative act[] . . . directed immediately and intentionally against a particular animal—not [an] act[] or omission[] that indirectly and accidentally cause[s] injury to a population of animals[.'] 91 Fed. Reg. at 43301.

Following the Final Rule, the Services issued internal Memoranda addressing the ESA's take prohibition as interpreted in the Final Rule. *See* Dkt. Nos. 23-1, 23-2.[1] The Memoranda, as routine agency guidance, summarize in practical terms the meaning of the ESA's "take" prohibition following the effective date of the Final Rule. Specifically, they restate the same analysis provided in the Final Rule, which adopted Justice Scalia's *Sweet Home* dissent and reduced the "take" prohibition to four elements: (1) an affirmative act that is (2) intentionally

[1] At the time Plaintiffs filed their Amended Complaint, the Memoranda had not been released publicly. The U.S. Fish and Wildlife Service's memorandum was leaked to the public; the National Marine Fisheries Service subsequently released its memorandum in response to a FOIA request.

directed at, and (3) operates directly on, (4) particular living animals. Dkt. No. 23-1 at 3-4; 23-2 at 3-4. The Memoranda also address the statute's *mens rea* provisions, which, as Justice Scalia explained, attaches to knowledge of an animal's biological identity. Dkt. No. 23-1 at 5; 23-2 at 5.

Nothing in the Memoranda is new. The four elements identified in the Memoranda come from Justice Scalia's dissent. *Compare* Dkt. No. 23-1 at 3, *and* Dkt. No. 23-2 at 3, *with Sweet Home*, 515 U.S. at 715-22, 732-35 (Scalia, J., dissenting). The Final Rule had already adopted the dissent's interpretation and repeatedly quoted its "directed immediately and intentionally against a particular animal" formulation. *Sweet Home*, 515 U.S. at 720 (Scalia, J., dissenting); 91 Fed. Reg. at 43301, 43305-06. The Memoranda simply illustrate applications of the "take" prohibition with specific examples (poison, felled trees, drained ponds, and unharmed butterflies), which are Justice Scalia's own examples. *Compare* Dkt. No. 23-1 at 3-4, *and* Dkt. No. 23-2 at 3-4, *with Sweet Home*, 515 U.S. at 721, 735 (Scalia, J., dissenting). The examples apply Justice Scalia's distinction between conduct directed at animals and conduct that injures them "indirectly and accidentally." Dkt. No. 23-1 at 4; Dkt. No. 23-2 at 4; *Sweet Home*, 515 U.S. at 719-20 (Scalia, J., dissenting); 91 Fed. Reg. at 43306. The *mens rea* discussion in the Memoranda also merely repeats Justice Scalia's discussion on *mens rea*. Dkt. No. 23-1 at 4-5; Dkt. No. 23-2 at 4-5; *Sweet Home*, 515 U.S. at 721-22 (Scalia, J., dissenting). In sum, the Services' post hoc Memoranda simply summarize prior analysis in the Final Rule and Justice Scalia's dissent; they do not purport to do anything new, have any independent impact of their own, or apply the Final Rule in any concrete way.

Nonetheless, Plaintiffs assert three new claims in their Amended Complaint challenging the non-binding, post-decisional Memoranda. Plaintiffs' new claims are asserted under the APA, alleging that the Memoranda are arbitrary and capricious (Second Claim for Relief), were issued without notice-and-comment rulemaking (Third Claim for Relief), and were issued in violation

of the National Environmental Policy Act (NEPA) (Fifth Claim for Relief). Dkt. No. 23 ¶¶ 124-37, 145-48. Plaintiffs added these claims to their amended pleading without seeking leave to supplement under Rule 15(d).[2]

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) allows a defendant to move for dismissal for lack of subject matter jurisdiction. Courts must dismiss any claim against the federal government for lack of subject matter jurisdiction unless Congress has unequivocally waived sovereign immunity for the claim. *Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995). The APA waives the federal government's sovereign immunity "to permit judicial review of only 'final agency action[s].'" *Nat'l Veterans Legal Servs. Program v. U.S. Dep't of Def.*, 990 F.3d 834, 839 (4th Cir. 2021) (quoting 5 U.S.C. § 704). "Because 'sovereign immunity is jurisdictional in nature,' finality under the APA is a jurisdictional requirement." *Jake's Fireworks, Inc. v. U.S. Consumer Prod. Safety Comm'n*, 105 F.4th 627, 631 (4th Cir. 2024) (quoting *City of N.Y. v. U.S. Dep't of Def.*, 913 F.3d 423, 430 (4th Cir. 2019)). It is the plaintiff's burden to show that subject matter jurisdiction exists. *Evans v. B.F. Perkins Co., Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999). When a defendant asserts that the plaintiff has failed to allege facts sufficient to establish subject matter jurisdiction, the allegations in the complaint are assumed to be true under the same standard as in a Rule 12(b)(6) motion. *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009).

[2] Notably, plaintiffs in multiple other lawsuits challenging the Final Rule sought leave under Rule 15(d) to assert nearly identical claims regarding the Memoranda. *See Swinomish Indian Tribal Cmty. v. Nat'l Marine Fisheries Serv.*, No. 2:26-cv-02473-TMC (W.D. Wash. Oct. 8, 2026), Dkt. No. 19; *Ctr. for Biological Diversity v. Burgum*, No. 2:26-cv-02474-TMC (W.D. Wash. Oct. 1, 2026), Dkt. No. 25; *see also* Joint Case Mgmt. Statement at 7, *Env't Prot. Info. Ctr. v. Nat'l Marine Fisheries Serv.*, No. 3:26-cv-07176-VC (N.D. Cal. Oct. 9, 2026), Dkt. No. 40 (plaintiffs' proposal to move for inclusion of claims based on actions post-dating the complaint).

Plaintiffs also bear the burden of establishing each element of Article III standing. *Lujan*, 504 U.S. at 561; *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006). To establish standing, Plaintiffs must demonstrate: (1) an "injury in fact" that is concrete and particularized, "not 'conjectural' or 'hypothetical'"; (2) a "causal connection between the injury and the conduct complained of"; (3) and a likelihood that the alleged injury "will be redressed by a favorable decision." *Lujan*, 504 U.S. at 560-61 (internal citations omitted). "[A]t the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). When a defendant asserts standing as the basis for the motion to dismiss, "the district court 'may consider evidence outside the pleadings without converting the proceeding to one for summary judgment.'" *White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 459 (4th Cir. 2005) (quoting *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)).

Rule 12(f) permits the Court, on motion of either party, to strike "from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Under Rule 15(d), if a plaintiff seeks to supplement their complaint with claims concerning "any transaction, occurrence, or event that happened *after* the date of the [initial] pleading[,]" they must do so by "motion and reasonable notice[.]" Fed. R. Civ. P. 15(d) (emphasis added). The Fourth Circuit has explained that a "supplemental pleading differs from an amended pleading because it relates to matters occurring subsequent to the filing of the initial complaint." *Franks v. Ross*, 313 F.3d 184, 198 n.15 (4th Cir. 2002).

## ARGUMENT

Plaintiffs' newly asserted claims challenging the Services' internal Memoranda do not meet the APA's jurisdictional prerequisite of challenging a final agency action. Nor do Plaintiffs have standing to challenge the non-binding legal analysis presented in the Services' Memoranda.

Because Plaintiffs' new claims are not cognizable under the APA and fail to meet the requirements for Article III standing, the claims should be dismissed. In the alternative, the Court should strike the claims as improperly asserted supplemental claims, relating to developments that occurred after Plaintiffs filed their initial complaint, which Plaintiffs filed without seeking leave as required by Rule 15(d).

## I. The Court lacks subject matter jurisdiction because Plaintiffs' claims do not challenge a final agency action under the APA.

Plaintiffs' new claims challenging the Memoranda are asserted under the APA. Dkt. No. 23 ¶¶ 124-37, 145-48. "The APA sets forth the procedures by which federal agencies are accountable to the public and their actions [are] subject to review by the courts." *Franklin v. Massachusetts*, 505 U.S. 788, 796 (1992). Specifically, the APA provides a right of review to a "person suffering legal wrong because of [an] agency action, or adversely affected or aggrieved by agency action." 5 U.S.C. § 702. To be subject to review, the agency action must be either "made reviewable by statute [or] final agency action for which there is no other adequate remedy[.]" *Id.* § 704. "[F]inality under the APA is a jurisdictional requirement." *Jake's Fireworks*, 105 F.4th at 631 (internal citation omitted). Under *Bennett*, an agency action is "final" for purposes of § 704 when it: (A) marks "the 'consummation' of the agency's decisionmaking process"; and (B) is a decision "by which 'rights or obligations have been determined,' or from which 'legal consequences will flow[.]'" 520 U.S. at 177-78 (citations omitted). Neither prong is met here.

### A. The Memoranda do not consummate any agency decision-making process.

Beginning with the first *Bennett* prong, the mere issuance of legal analysis, untethered to any specific agency decision-making process, fails to constitute final agency action under the APA. Specifically, the Memoranda are not part of any identifiable agency decision-making process. They do not grant or deny a permit, resolve any enforcement matter, or adopt a rule. By

contrast, an agency's issuance of a biological opinion and incidental take statement generally constitutes final agency action because it is the consummation of the statutory decision-making process described in ESA Section 7. *See* 16 U.S.C. § 1536(a)(2), (b)(4); *Bennett*, 520 U.S. at 178. The Memoranda do not perform the same function. They instead address legal principles independent of any agency process or proceeding. As the Fourth Circuit explained in *Golden & Zimmerman*, an agency reference guide designed to aid regulated entities with statutory and regulatory compliance was not final agency action because it did not culminate from the agency's decision-making process—it simply restated the requirements of the statute and a prior decision. 599 F.3d at 432. The same is true here. The Memoranda are not the culmination of the agencies' decision-making processes; the Memoranda merely restate the Services' legal interpretation of the ESA put into effect by the Final Rule, which *was* the culmination of the agencies' decision-making process.[3]

**B. Legal consequences do not flow from the Memoranda.**

The second *Bennett* prong also cuts against final action. It asks whether the agency action is a decision "by which 'rights or obligations have been determined,' or from which 'legal consequences will flow[.]'" *Bennett*, 520 U.S. at 178. Here, the Memoranda determine no rights or obligations, and no legal consequences flow from them. The Memoranda neither command anyone to act or refrain from acting, nor do they "determine any right or obligation of any party." *Invention Submission Corp. v. Rogan*, 357 F.3d 452, 460 (4th Cir. 2004). Indeed, the Memoranda are "a bare statement of the agency's opinion," not actual commands to agencies or regulated parties regarding any specific project or other matter. *S. Cal. All. of Publicly Owned Treatment*

[3] Nor, for similar reasons, do the Memoranda even constitute "agency action" under the APA, which refers to "an agency rule, order, license, sanction, relief, or the equivalent or denial thereof." 5 U.S.C. § 551(13); *Golden & Zimmerman*, 599 F.3d at 432 (Because "a statement by an agency that simply restates an established interpretation 'tread[s] no new ground' and 'le[aves] the world just as it found it,'" it is not "agency action.") (citation omitted).

*Works v. U.S. EPA*, 8 F.4th 831, 837-38 (9th Cir. 2021) (guidance is not final when "subsequent agency decision making is necessary to create any practical consequences").

Internal agency statements analyzing the law impose no legal consequences because "it is the court that ultimately decides whether a given regulation [or statute] means what the agency says." *See Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 103-04 & n.4 (2015). Indeed, non-binding internal agency statements generally interpreting the law do not cause legal consequences to anyone. For example, in *Golden & Zimmerman,* the Fourth Circuit found that, although the guidance document at issue "inform[ed] the regulated community of what violates the law[,]" it did "not itself *determine* the law or the consequences of not following it." 599 F.3d at 432-33. Thus, the court held that the guidance was not reviewable final agency action, as its role was "simply to inform licensees of what the law, previously enacted or adopted, is, and its publication did not itself alter the legal landscape. Indeed, if the [agency] had never published the [guidance], the [agency] would still have had the authority to prosecute . . . [as] described in [the guidance] because legal consequences do not emanate from [the guidance] but from the [statute] and its implementing regulations." *Id.* at 433. So too here. The ESA and its "take" prohibitions as interpreted by the Final Rule are the source of any legal obligations, not the Services' non-binding, internal Memoranda explaining the agencies' interpretation of the law. In other words, the same legal rights and obligations would exist under the ESA and Final Rule with or without the Memoranda. Moreover, legal obligations imposed by the ESA are fixed at the time of the statute's enactment in 1973, not when the Services interpreted those mandates in 2026. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024) (citation omitted).

The Ninth Circuit has also given effect to these principles when differentiating "between an informational document that merely provides the agency's interpretation of a statute, . . . and a decision that determines how a statute or regulation applies to facts for enforcement purposes[.]"

*Advanced Integrative Med. Sci. Inst., PLLC v. Garland*, 24 F.4th 1249, 1258 (9th Cir. 2022). An agency informational "document [that] . . . is little more than a restatement" of the applicable law does not constitute final agency action. *Id.* at 1260. Such is the case here. The Memoranda break no new ground by merely restating what was in the Final Rule. In the Final Rule, the Services adopted the rationale in Justice Scalia's dissent as the best reading of the statute. 91 Fed. Reg. at 43301. The Services explained that Justice Scalia's interpretation of the term "harm" was the best reading of the statute: the "term 'harm,' like the other nine verbs in the definition of 'take,' should be construed to require an 'affirmative act[] . . . directed immediately and intentionally against a particular animal—not [an] act[] or omission[] that indirectly and accidentally cause[s] injury to a population of animals.'" *Id.* (quoting *Sweet Home*, 515 U.S. at 719-720 (Scalia, J., dissenting)) (alterations in original).

In sum, Plaintiffs direct their claims at post hoc internal Memoranda that summarize analysis and decisions already made in the Final Rule and not at some new final agency action as required by the APA.

**II. Plaintiffs lack standing to bring claims speculating about general future harms.**

Plaintiffs also lack standing to challenge the Memoranda.[4] Article III confines federal court jurisdiction to "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. "For there to be a case or controversy under Article III, the plaintiff must have a personal stake in the case—in other words, standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citation modified). To establish standing, Plaintiffs must show (1) a concrete and particularized injury that (2) is traceable to the challenged conduct and (3) would likely be redressed by a favorable decision. *Lujan*, 504 U.S. at 560-61. Because Plaintiffs seek prospective relief, they must

[4] The Court need not reach this issue if it determines that Plaintiffs have not challenged a final agency action. Similarly, the Court need not reach the issue of final agency action if it determines that Plaintiffs lack standing to challenge the Memoranda.

establish a "sufficient likelihood of future injury." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024). "[S]peculation does not suffice." *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009).

Plaintiffs' challenges to the Services' Memoranda fail because they merely speculate about future injury, and they cannot show traceability. The Memoranda, by themselves, impose no consequences on anyone. The Memoranda restate what the ESA and Final Rule already require and thus break no new ground. Plaintiffs cannot show that the Services' non-binding restatement of the Final Rule's legal analysis of "take," in and of itself, injures them. Only five paragraphs in Plaintiffs' Amended Complaint allege any harm from the Memoranda. *See* Dkt. No. 23 ¶¶ 26-30. Tellingly, each of those paragraphs lump the alleged harm from the Memoranda together with the Final Rule, drawing no distinction between their impacts and implicitly acknowledging that the Memoranda have no independent effect. *Id.*

Nor do Plaintiffs allege that harm will result from any particular decision about a specific project, incidental take permit, or conservation plan. Instead, Plaintiffs broadly allege that the Final Rule and Memoranda "threaten the development of a number of specific conservation programs and measures . . . that are closely tied to members' species interests[,]" and that, "if habitat destruction and modification is no longer regulated under the ESA, [Plaintiffs' members] are concerned that these habitat conservation plans . . . will no longer move forward." *Id.* ¶ 29; *see also, e.g., id.* ¶ 26 (alleging concerns of habitat destruction from "rampant development in coastal areas" in South Carolina), ¶ 27 (alleging concerns that mitigation and conservation work will be reduced); ¶ 28 (alleging that that Plaintiffs should have been permitted to participate in the NEPA process). But Plaintiffs mere concerns about the future of unidentified habitat conservation plans do not establish a concrete, imminent injury. *Nat'l Park Serv. v. Nat'l Tr. for Hist. Pres. in the U.S.*, No. 26A203, 2026 WL 2564318, at *3 (U.S. Aug. 31, 2026) (per curiam)

(distress over, or disagreement with, a defendant's actions is not injury in fact). These allegations fall far short of meeting Article III's "fairly traceable" requirement for standing. Plaintiffs' general concern and speculation that unspecified conservation plans may "no longer move forward", Dkt. No. 23 ¶ 29, is "at a high level of generality" that simply does not suffice under Article III. *Murthy v. Missouri*, 603 U.S. 43, 59 (2024).

## III. In the alternative, the Court should strike Plaintiffs' improperly asserted supplemental claims.

The Court should strike Plaintiffs' new claims regarding the Memoranda because Plaintiffs included them in their Amended Complaint without first obtaining leave from the Court, contrary to the requirements of the Federal Rules of Civil Procedure. Rule 15(d) expressly provides that, "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading" relating to events that occurred after the date of the pleading being supplemented. Fed. R. Civ. P. 15(d). The Fourth Circuit recognizes that a supplemental pleading differs from an amended pleading because it addresses matters arising after the filing of the initial complaint. *Franks*, 313 F.3d at 198 n.15. Thus, because Plaintiffs' newly asserted claims pertain to Memoranda issued nearly two months after they filed their initial complaint, the claims are supplemental in substance and subject to Rule 15(d)'s requirement of judicial permission. Plaintiffs' unilateral injection of these claims in an amended pleading without obtaining the Court's authorization is procedurally improper. The Court should therefore strike the supplemental claims from the Amended Complaint, without prejudice to Plaintiffs' seeking leave to assert them through a properly filed supplemental pleading under Rule 15(d).

## CONCLUSION

The Court should dismiss Plaintiffs' Second, Third, and Fifth Claims for Relief in the Amended Complaint, or in the alternative, strike the claims without prejudice to Plaintiffs' seeking leave to assert them through a properly filed supplemental complaint under Rule 15(d).

Dated: October 27, 2026

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
Energy and Natural Resources Division
United States Department of Justice

MEREDITH L. FLAX, Deputy Section Chief
MICHAEL R. EITEL, Assistant Section Chief

*/s/ Michelle M. Spatz*
MICHELLE M. SPATZ, Senior Trial Attorney (DC Bar 1044400)
SARA M. WARREN, Trial Attorney (GA Bar 966948)
Wildlife and Marine Resources Section
Ben Franklin Station, P.O. Box 7611
Washington, D.C. 20044-7611
202-598-5785 (Warren); 202-598-9741 (Spatz)
sara.warren@usdoj.gov; michelle.spatz@usdoj.gov

ALEC BOWMAN, Trial Attorney (DC Bar 90019707)
Natural Resources Section
150 M Street NE
Washington, D.C. 20002
202-532-3098
alec.bowman@usdoj.gov
*Attorneys for Federal Defendants*